IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION

| | |
|---|---|
| PATRICIA LYNN CORNELIUS, Administratrix of the Estate of Joseph Glynn Fryer,<br><br>PLAINTIFF,<br><br>v.<br><br>MADISON COUNTY FISCAL COURT, et al.<br><br>DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) CASE NO. 5:24-CV-00256-REW<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S RESPONSE TO DEFENDANT MADISON COUNTY FISCAL COURT'S FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS**

COMES NOW Plaintiff Patricia Lynn Cornelius, Administratrix of the Estate of Joseph Glynn Fryer, by the undersigned counsel, and respectfully requests that this Honorable Court DENY the Fed. R. Civ. P. 12(b)(6) Motion to Dismiss filed by Defendant Madison County Fiscal Court and as a basis for such shows as follows:

**STATEMENT OF FACTS**

Joseph Glynn Fryer (hereafter "Fryer") was booked into the Madison County Detention Center on September 15, 2023 for a failed drug test, which was a probation violation. *Compl*. ¶59. The Madison County Detention Center (hereafter "the Detention Center") is a 184 bed facility with an average daily population of over 500 inmates, which is nearly triple the facility's capacity. *Compl*. ¶25.

Fryer was or became ill while incarcerated at the Detention Center and went to the infirmary. *Compl*. ¶62. At that point Fryer was so sick he fell into a medical cart. *Compl*. ¶63. Fryer's condition deteriorated over a two day period which was exhibited by vomiting, labored

breathing, and severe pain. *Compl*. ¶¶64, 65, 67. Yet at no time was Fryer evaluated by a physician or provided medical treatment, and neither the Madison County Employees nor the WKCH Employees did anything in response to Fryer's vomiting and other physical manifestations of a serious internal medical condition, despite their knowledge of his condition. *Compl*. ¶66, 70, 71, 72. Because of the lack of medical treatment for his condition, Fryer died on September 19, 2023 at the age of 45. *Compl*. ¶7, 75. The cause of death was determined to be a perforated duodenal ulcer. *Compl*. ¶61.

Defendant Madison County is charged with the responsibility of prescribing rules for the government, security, safety, and cleanliness of the Detention Center and providing for the comfort and treatment of inmates pursuant to Kentucky Revised Statute § 441.045(1). *Compl*. ¶14. Defendant Madison County is statutorily charged with paying for the cost, up to the amount of $1,000 per prisoner, of providing necessary medical, dental, and psychological care for indigent county prisoners in the jail pursuant to Kentucky Revised Statute § 441.045(3)(7). *Compl*. ¶15.

The constitutionally deficient conditions at the Detention Center have been public knowledge since at least 2019 when Defendant Steve Tussey and John Tudor, a former member of the Defendant Madison County Fiscal Court, spoke out publicly about the unsafe and "dangerous" conditions. *Compl*. ¶24, n. 1.[1] In 2019 WYTM quoted Defendant Tussey, who is the elected Madison County Jailer and a member of the Madison County Fiscal Court, as saying that the overcrowding at the Detention Center is "too much," and the facility is "not safe." *Compl*. ¶18, 24, *Id*. In that same report, formal Fiscal Court member John Tudor similarly noted, "We are to the point it is dangerous in the jail we are going to have to do something. Almost everyone I talk

---

[1] The article linked in footnote 1 of the Complaint is,
https://www.wymt.com/content/news/Madison-County-Detention-Center-faces-overcrowding-issues-officials-say-it-is-unsafe---558046721.html

to says its time to move forward." *Compl*. n. 1. At that time the 184 bed Detention Center housed 413 inmates. *Id*. The ratio of inmates to deputies was 50-1. *Id*. Defendant Tussey and former Fiscal Court member Tudor placed the blame for the problem squarely on Madison County and called for the County to take steps to alleviate the problem. *Id*.

Instead, Madison County has allowed conditions at the Detention Center to worsen. Despite Defendant Tussey's vow in 2019 to cap the population of the 184 bed Detention Center at 450, the population had risen to more than 500 at the time of the filing of this action. *Compl*. ¶21, 25. The overcrowding at the Detention Center has resulted in inadequate adequate health care for inmates. *Compl*. ¶27, 28, 29. Inadequate medical care is common at the Detention Center which saw at least four publicly reported deaths between August 2022 and February 2024. *Compl*. ¶29, 54, n.4. For instance in July 2013, just two months before Fryer's death, a Kentucky medical examiner determined that "medical neglect" contributed to another inmate's death who died of infectious endocarditis, hepatitis C, renal failure, sepsis and brain hemorrhaging after only a one week stay at the Detention Center. *Compl*. ¶54, n.4. In the days before that inmate's death, his cell mates were captured on video exclaiming, "What's it going to take for you all to call a f---ing ambulance?" *Compl*. n. 4.[2] The cell mates were also heard stating that another inmate had died the previous week. *Id*.

Joseph Fryer's needless death in this case was likewise a direct result of the failure of anyone at the Detention Center to provide the necessary medical treatment to Fryer in response to a serious and obvious medical condition. That failure to provide medical care, and Fryer's resulting death, directly flowed from the very policies, procedures, and customs of the Madison County

---

[2] The article linked in footnote 4 of the Complaint is https://www.murrayledger.com/news/kentucky-man-neglected-left-in-filth-at-richmond-jail-before-death-lawsuit-says/article_68d8388a-5b5f-11ef-99f8-5bd6828e5174.html

Fiscal Court for which it has been publicly condemned by two of its own members, including Defendant Tussey, who has now found himself sued for carrying out the very unconstitutional policies he has publicly criticized.

## ARGUMENT

Madison County Fiscal Court's Motion to Dismiss the Plaintiff's 42 U.S.C. § 1983 claim against it is due to be denied. The Complaint, with all factual allegations taken as true and all reasonable inferences drawn in favor of Fryer's Estate, plausibly alleges a §1983 cause of action against Madison Count under the theory of liability established by *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Therefore, the motion is due to be denied.

Alternatively, if this Court finds that the Complaint does not currently adequately alleged a §1983 claim against Madison County, Plaintiff respectfully requests that this Court grant Plaintiff give to amend the Complaint.

## I. STANDARD OF REVIEW

Fed. Rule Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court noted in *Erickson v. Pardus*, 551 U.S. 89 (2007), "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" 551 U.S. at 93 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, "[o]n a Rule 12(b)(6) motion, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the pleader." *Evans–Marshall v. Bd. Of Educ. Of the Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 228 (6th Cir. 2005). Nonetheless, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 570).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.  The standard calls for only "enough facts to raise a reasonable expectation that ***discovery will reveal evidence***" of the claim.  *Twombly*, 550 U.S. at 556 (emphasis added).

The Sixth Circuit has emphasized,

> Claims under  42 U.S.C. § 1983 are not subject to heightened pleading standards. Therefore, a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Claims lacking factual merit are properly dealt with through summary judgment under Rule 56. Id. This is because, under the notice pleading standard of the Federal Rules, courts are reluctant to dismiss colorable claims which have not had the benefit of factual discovery.

*Evans–Marshall v. Bd. Of Educ. Of the Tipp City Exempted Vill. Sch. Dist*., 428 F.3d 223, 228 (6th Cir. 2005)(internal citations and quotations omitted).

## II.  THIS COURT CAN CONSIDER THE MATERIALS REFERENCED AND LINKED IN THE COMPLAINT IN RULING ON THE MOTION TO DISMISS

As an initial matter, Plaintiff notes that the matters contained in the articles referenced and linked in the Complaint are properly before this Court in considering Defendant Madison County Fiscal Court's Motion to dismiss.  The court in *McLaughlin v. CNX Gas Co., LLC*, 639 Fed. Appx. 296 (6th Cir. 2016) noted,

> We may also consider documents that a defendant attaches to a motion if the documents "are referred to in the plaintiff's complaint and are central to her claims" without converting the motion to one for summary judgment. Likewise, we may consider matters of public record in deciding a motion for judgment on the pleadings.

639 Fed. Appx. at 298-299 (internal citations omitted).

The court in *Plassman v. City of Wauseon*, 85 F.3d 629 (6th Cir. 1996) further noted, "[D]ocuments whose contents are alleged in a complaint and whose authenticity is uncontested, but that are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." (citing *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994)).

Court have also noted that in ruling on a motion to dismiss, the court can properly consider "materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)(internal citations and quotation marks omitted). In *Watson v. Olson*, No. 6:23-cv-03004-RK, 2023 WL 11756893 at *2 (W.D. Mo. 2023), the court found that a video "to which Plaintiff specifically refers in his complaint with time-stamped references and a URL link – is embraced by the complaint and may be properly considered in ruling on Defendants' motion to dismiss."

In the present case, the Plaintiff's Complaint quotes from, refers to, and provides a URL link to an 2019 news report where Defendant Steve Tussey, the County Jailer, and John Tudor, a former member of the Defendant Madison County Fiscal Court publicly condemned the unsafe and "dangerous" conditions at the Detention Center and called on Madison County to take steps to alleviate the overcrowding causing those conditions. *Compl*. ¶24, n. 1.

The Complaint also refers to and provides a link to a news report providing the details of the death of another inmate at the Detention Center during the same two month time period as Fryer's death where that inmate was similarly denied medical treatment. *Compl*. ¶54, n.4.

The contents of those news reports are "referred to in the plaintiff's complaint," and are central to the Plaintiff's claim that the policies and customs of Madison County resulted in the denial of medical care which caused the Plaintiff's death. *McLaughlin*, 639 Fed. Appx. at 298-299

Therefore, those materials can be properly considered by this Court in considering Defendant Madison County's Motion to Dismiss.

### III. THE PLAINTIFF HAS PLAUSIBLY ALLEGED A 42 U.S.C. § 1983 CLAIM AGAINST MADISON COUNTY

The constitutional right of inmates to adequate medical care has been long established. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Court held,

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," … proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally ***denying or delaying access to medical care*** or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, ***deliberate indifference to a prisoner's serious illness or injury states a cause of action under s 1983.***

429 U.S. at 105 (emphasis added)(internal citations omitted).

Pre-trial detainees enjoy those same rights through the Due Process Clause of the Fourteenth Amendment: "[T]he Supreme Court has long held that the Due Process Clause offers protections to pretrial detainees that at least match those afforded convicted prisoners under the Eighth Amendment." *Lawler as next friend of Lawler v. Hardeman County, Tennessee*, 93 F.4th 919, 926 (6th Cir. 2024); "Pretrial detainees have a right to adequate medical care under the Fourteenth Amendment. An officer violates that right if that officer shows deliberate indifference to [a pretrial detainee's] serious medical needs[.]" *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022) (internal citations and quotation marks omitted)

In *Jones v. Kenton Cnty., Kentucky*, No. 2:23-cv-164-DCR, 2024 WL 1705210 (E.D. Ky. Apr. 19, 2024), the court noted that the Sixth Circuit had never definitively decided whether a person incarcerated as a result of a probation violation is a pre-trial detainee entitled to adequate medical treatment under the Fourteenth Amendment or a convicted inmate entitled to adequate

medical treatment under the Eight Amendment. However, the court ultimately reasoned, based on the necessary implications of several Sixth Circuit cases, that such persons should be treated as pre-trial detainees since "the violation which led to his arrest and subsequent detention had not been adjudicated." 2024 WL 1705210 at 84.

In the present case, a determination of Fryer's status is not necessary for purposes of deciding the present motion since the Madison County Fiscal Court does not dispute the underlying constitution deprivation, but only whether it can be held responsible for the deprivation under a Monell theory of liability.

Turning now to the analysis necessary to determine whether the Plaintiff has plausibly alleged a 42 U.S.C. § 1983 claim against Madison County under a *Monell* theory of liability, "a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen." *Bright v. Gallia County*, 753 F.3d 639, 660 (6th Cir. 2014).

As noted above, Madison County does not dispute whether Fryer suffered a violation of a federal right for purposes of their motion to dismiss. Nor is there any dispute as to whether those who caused the constitutional violation were acting under color of state law. Therefore, the only issue before this Court at this time is whether a "policy or custom" of Madison County caused that violation. In *Lipman v. Budish*, 974 F.3d 726 (6th Cir. 2020), the court noted,

> Under *Monell* and its progeny, there are four ways a plaintiff can demonstrate a policy or custom that could allow for municipal liability:
>
> A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

974 F.3d at 747 (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

"'[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.'" *Id*. at 748 (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997)). "Thus, while policies are created through the official acts of the municipality's ultimate decision-makers, a custom can be informal but must be so extensive as to still be attributable to the municipality as a whole." *Id*. "[T]he mere allegation of a single act of unconstitutional conduct by a municipal employee will not support the inference that such conduct was pursuant to official policies. On the other hand, ***where the plaintiff alleges a pattern or a series of incidents*** of unconstitutional conduct, then ***the courts have found an allegation of policy sufficient to withstand a dismissal motion***." *Powe v. City of Chicago*, 664, 650 F.2d 639 (7th Cir. 1981)(emphasis added).

In *Moderwell v. Cuyahoga County, Ohio*, 997 F.3d 653 (6th Cir. 2021) the court found that the estate of a pretrial detainee who committed suicide in county jail plausibly alleged a claim against the Executive Defendants in the case under a *Monell* theory of liability. The court noted that the Amended Complaint alleged that the Executive Defendants "knew of a custom, propensity, and pattern" of prison officials "failing and/or refusing to provide prompt and competent access to and delivery of medical and mental health assessment, evaluation, care, intervention, referral, and treatment, to detainees." 997 F.3d at 664. In finding that this was sufficient to survive a motion to dismiss, the court reasoned, "At summary judgment, Plaintiff's burden will be to present facts showing that the Executive Defendants knew about the unconstitutional conduct and did more than play a passive role in the alleged violations or show mere tacit approval of the goings on." … ***But this burden is not on Plaintiff at the pleading stage***." *Id*. at 665-665 (internal citations and quotations omitted)(emphasis added).

In *Farr v. Centurion of Tenn.*, LLC, No. 17-5482, 2018 WL 5621612 (6th Cir. June 5, 2018), the Sixth Circuit reversed a dismissal of an inmate's §1983 claim related to the inadequate medical care he was receiving while incarcerated. The complaint alleged that the defendants failed to provide medical care "mostly because of the cost, but also because they don't care about providing the needed care to inmates" and that defendants "want to save all the dollars they can." 2018 WL 5621612 at *2. In support of this contention, the defendant sets out factual allegations concerning both the care he received and the care he requested but was denied during his incarceration. The Sixth Circuit found this complaint "sufficiently alleged that his Eighth Amendment rights were violated by [defendant'] policy of providing less than adequate medical care to save money" which was then supported by his factual allegations of the inadequate health care he received. 2018 WL 5621612 at *3.

The court in *Love v. Franklin Cty., Ky.*, 376 F. Supp. 3d 740 (E.D. Ky. 2019) similarly denied Franklin County's motion to dismiss an inmate's §1983 claim based on inadequate medical care she received at the Franklin County Regional Jail. In that case, the inmate was required to give birth while incarcerated with no medical assistance. The plaintiff asserted a claim against Franklin County under a theory of *Monell* liability among her other claims. In denying Franklin County's motion to dismiss, the court noted,

> The amended complaint alleges that Franklin County and Defendant Rogers failed to adequately train, supervise, or discipline their employees. Specifically, Love alleges the Defendants were not trained on how to respond to medical emergencies among inmates. … Further, it alleges that Franklin County and Defendant Rogers's failure to train was so pronounced that it "amounted to deliberate indifference that inaction would obviously result in the violation of the right to medical care or attention to medical needs."

376 F. Supp. 3d at 749.

> Whether it's true training at FCRJ was really so inadequate that "inaction would obviously result" will certainly come to light in discovery or at trial. ***At this stage, Love is not required to prove her claim, only plead it.*** The Court finds that she has done so sufficiently enough to survive a motion to dismiss.

*Id*. (emphasis added).

The court in *Johnson v. Wellpath/CSS*, No. 3:21-CV-00484-JHM, 2023 WL 4240756 (W.D. Ky. June 28, 2023) the court rejected the defendant's argument that an inmate had failed to identify any policy or custom of the defendant that caused his injury for purposes of *Monell*.

> Here, contrary to Defendants' argument, ***Plaintiff appears to allege that Wellpath had a policy, custom, or practice of not providing inmates medication***, that Wellpath continued to permit its employees to withhold medication throughout Plaintiff's incarceration at KSR, and Plaintiff's physical and mental pain and suffering were directly linked to his failure to obtain his diabetes medication, along with other medications. Construing the complaint in the light most favorable to Plaintiff, as the Court is required to do at the pleadings stage, … the Court finds that Plaintiff has sufficiently alleged a policy, custom, or practice on the part of Wellpath and will deny the motion to dismiss on this basis.

2023 WL 4240756 at *3 (emphasis added).

Similarly, in *Glass v. Franklin Cnty.*, No. 3:19-cv-00051-GFVT, 2020 WL 3086602 (E.D. Ky. June 10, 2020), the court found that the plaintiff plausibly alleged a §1983 claim against Franklin County under a *Monell* theory of liability where a pretrial detainee died in the Franklin County Regional Jail from complications relating to drug withdrawal. The complaint alleged that Franklin County was put on notice as to their deputy jailers' ignorance of and failure to follow the Jail's medical emergency services policy for inmates experiencing withdrawal in an earlier case where one other inmate had died under similar circumstances. The complaint alleged that plaintiff "***believes and, after reasonable discovery, will show that Dylan's treatment by Defendants was the result of policies, customs and practices of Franklin County***." 2020 WL 3086602 at 5 (emphasis added). The court concluded, "Here, Ms. Glass has sufficiently pled constitutional violations on the party of the Deputy Jailers and Defendant Rogers. Her complaint further ***alleges***

- 11 -

***that Franklin County itself has a policy of leaving constitutional abuses unchecked in its county jail***. The Court finds that Ms. Glass's complaint states a claim against Franklin County, and that dismissal at this stage is not appropriate." 2020 WL 3086602 at 5 (emphasis added).

Furthermore, courts have also found that in order to survive a motion to dismiss a claim based on *Monell*, the policy or custom in question need not be explicitly stated in the complaint as long as the complaint alleges facts from which such policy or custom can be inferred. In *Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981), the court explained, "Under *Monell*, the policy of the municipality is not to be examined, in a vacuum, for unconstitutionality." The court reasoned,

> Thus, ***that Powe's complaint does not point to a specific, articulated policy of the city or the county is not fatal to his claim***. His complaint will withstand dismissal if the facts alleged, together with reasonable inferences to be drawn from them, could lead a reasonable factfinder to conclude that the actions of the county and city employees, by which Powe was unconstitutionally deprived of his liberty, were the product of some policy or custom of the municipal entities.

*Id*. (emphasis added).

Likewise, in *Milby v. Underwood*, 713 F. Supp. 3d 383 (W.D. Ky. 2024), the court found that the allegations of the complaint were sufficient to impose liability under Monell notwithstanding that although the "complaint alleges over and over that there is a policy or custom that led to inadequate medical care, which subsequently contributed to Milby's death" "the complaint never says exactly what WKCH's policy was." 713 F. Supp. 3d at 390. The court noted that it was "required not only to presume all alleged facts are true, but also to draw all reasonable inferences in favor of Plaintiffs." *Id*. at 391. The court found, "While the complaint does not identify a specific source of a policy or custom designed by WKCH that contributed to Milby's death, it does allege facts that allow the Court to reasonably infer that one existed." *Id*. at 390.

Applying the above authorities to the present case, Fryer's Estate has plausibly alleged a claim against Madison County under a *Monell* theory of liability. The complaint alleges, with regard to all Defendants, including Madison County: "Defendants were deliberately indifferent to, and willfully ignored, the serious medical needs of Decedent, as described herein, by failing to establish, monitor, and/or enforce policy directives and operational procedures to ensure that inmates at MCDC receive prompt and reasonable treatment for their medical needs." *Compl.* ¶107. The complaint alleges with regard to all supervisory Defendants, including Madison County: "Defendant supervisors likewise exhibited supervisory indifference or tacit authorization of the misconduct of subordinates and the constitutional injuries committed by said subordinates." *Compl.* ¶108. "Defendant supervisors had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury and he Defendant supervisors' response to said knowledge was so inadequate as to show deliberate indifference or tacit authorization of these constitutional injuries." *Compl.* ¶109.

With regard to Madison County in particular the Complaint alleges: "Madison County maintained policies, procedures, or customs that resulted in the deprivation of adequate medical care to inmates at MCDC." *Compl.* ¶11. "Madison County has a policy or custom of continuing to maintain MCDC in an overcrowded condition." *Compl.* ¶28. "Madison County has a policy or custom of failing to provide adequate medical care to inmates." *Compl.* ¶29. "Madison County has a policy or custom of failing to provide adequate medical care to inmates in order to save on medical costs. *Compl.* ¶30. "Madison County deprived Decedent of his Eighth Amendment rights by and through its official policies or customs as described herein." *Compl.* ¶111. "Madison County deprived Decedent of his Fourteenth Amendment rights by and through its official policies or customs as previously described herein." *Compl.* ¶125.

Fryer's Estate has further supported those allegations with specific facts demonstrating not only the two day long denial of medical attention which resulted in Fryer's death, but also the death of another inmate two months earlier whose death was determined by the Kentucky medical examiner to be the result of "medical neglect." Similar to Fryer's situation during which his obvious medical needs were ignored for two days, this other inmate died when his medical needs went ignored for one week. The same news report which detailed the neglect suffered by that inmate also noted that there had been at least four publicly reported deaths between August 2022 and February 2024 at the Madison County Detention Center.

More tellingly, one of the very Defendants in this action, County Jailer Steve Tussey, as well as John Tudor, a member of the Defendant Madison County Fiscal Court, have spoken out publicly about the constitutionally deficient conditions at the Detention Center, and they placed the blame squarely on the shoulders of Madison County. In 2019 Defendant Tussey warned that the overcrowding at the Detention Center was "too much," and the facility was not safe. In the same report former Fiscal Court member John Tudor similarly noted, "We are to the point it is ***dangerous*** in the jail we are going to have to do something. Almost everyone I talk to says its time to move forward." At that time the 184 bed Detention Center housed 413 inmates, and the ratio of inmates to deputies was 50-1. Instead of responding to the petitions of officials such as Tussey and Tudor to address the problem, Madison County has allowed the situation to worsen, with the current number of average daily inmates exceeding 500.

Defendant Madison County argues "overcrowding is not, in itself, a constitutional violation," citing *Agramonte v. Shartle*, 491 Fed. App. 557, 560 (6th Cir. 2012) for that proposition. However, what the Sixth Circuit actually said in *Agramonte* is

> Although the FCI Elkton inmates may have been ***inconvenienced*** by the increased population, overcrowding is not, in itself, a constitutional violation, and the

- 14 -

> ***plaintiffs have not alleged that the allegedly overcrowded conditions resulted in an unconstitutional denial of such basic needs*** as food, shelter, or sanitation.

491 Fed. App. At 560 (emphasis added).

In the present case, by contrast, that is precisely what Fryer's Estate has alleged; that the severe overcrowding which Defendant Tussey and former Fiscal Court member Tudor publicly condemned as "not safe" and "dangerous," has resulted "in the inability to provide adequate health care services to inmates, including Decedent." *Compl.* ¶27.

In *Brown v. Plata*, 563 U.S. 493 (2011), the Supreme Court discussed at length the necessary correlation between "exceptional" overcrowding, and the denial of adequate medical care to inmates. There, the Supreme Court found that "[t]he degree of overcrowding in California's prisons is ***exceptional***" where the prison population there was merely "almost double" the amount the prisons were designed to house." 563 U.S. at 502. The Court found, "Crowding also creates unsafe and unsanitary living conditions that ***hamper effective delivery of medical*** and mental ***health care***." Id. at 519 (emphasis added). The court explained, "On any given day, prisoners in the general prison population may become ill, thus entering the plaintiff class; and ***overcrowding may prevent immediate medical attention*** necessary to avoid suffering, death, or spread of disease." *Id*. at 520 (emphasis added). The Court quoted a number of high ranking corrections officials across several states who identified overcrowding as the primary impediment to providing inmates with constitutionally adequate healthcare: "[C]rowding 'makes it virtually impossible for the organization to develop, much less implement, a plan to provide prisoners with adequate care.'" *Id*. at 521; "'[Overcrowding is the primary cause of the medical and mental health care violations.'" *Id*.; "[O]vercrowding is 'overwhelming the system both in terms of sheer numbers, in terms of the space available, in terms of providing healthcare.'" *Id*. at 522; "'[T]he biggest

- 15 -

inhibiting factor right now in California being able to deliver appropriate mental health and medical care is the severe overcrowding.'" *Id*.

Of course the Plaintiff in the present case, at the pleading stage, has not even had the benefit of discovery, much less the kind of expert testimony set out in *Brown v. Plata*, but she has alleged "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. The Complaint alleges overcrowding that far exceeds what the Supreme Court in Brown called "exceptional" where the number of inmates was merely "almost double" the capacity of the prisons. 563 U.S. at 50. In the present case, the 184 bed Madison County Detention Center currently houses a daily average of more than 500 inmates. That is very nearly *triple* the capacity of the facility. The Complaint also alleges that Fryer was consistently denied medical care for his serious medical condition over a two day period. This was not simply one detention center official on one occasion violating Fryer's constitutional rights. This was *every* detention center official failing to respond to Fryer's obvious need for medical care as the various employees changed shifts over a two day period. The Complaint also embraces a public report of another inmate during this same time frame likewise being consistently denied medical care for his serious condition for a full week, which likewise resulted in his death. The Complaint further embraces public statements made by Defendant Tussey and former fiscal member Tudor which acknowledge the "dangerous" and unsafe conditions of the Detention Center and place the blame for that squarely on Madison County. This is more than enough to plausibly allege a claim against Madison County under a *Monell* theory of liability.

## IV. ALTERNATIVELY, PLAINTIFF SHOULD BE GIVEN LEAVE TO AMEND THE COMPLAINT

While Plaintiff contends that the Complaint, as currently drafted, plausibly alleges a §1983 claim against Madison County under a *Monell* theory of liability, Plaintiff would alternatively

- 16 -

request that this Court grant the Plaintiff leave to amend if this Court finds that the Motion to Dismiss as to Madison County is due to be granted. "Federal Rule Civil Procedure 15(a) provides that leave to amend a pleading should be 'freely given when justice so requires.' Furthermore, the thrust of Rule 15 is to reinforce the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986)(quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982).

Plaintiff has not previously amended her Complaint in this case, and this pleading has been filed within 21 days of the filing of the Motion to Dismiss. Therefore, if this Court finds that Madison County's Motion to Dismiss is due to be granted, Plaintiff would respectfully request leave to amend.

## CONCLUSION

For the above stated reasons, Plaintiff respectfully requests that this Honorable Court DENY the Motion to Dismiss filed by Defendant Madison County Fiscal Court. Alternatively, Plaintiff requests leave to amend the Complaint.

> Respectfully submitted,
>
> LAW OFFICE OF JEREMY A. BARTLEY
>
> /s/ Jeremy A. Bartley
> Jeremy A Bartley
>
> Attorney for Plaintiff:
>
> 35 Public Square
> Somerset, KY 42501
> (606) 678-7265
> (606) 416-5974 (facsimile)
> Email: jbartleylaw@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2024, a true and correct copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's CM/ECF System:

L. Scott Miller
Maureen C. Malles
STURGILL, TURNER, BARKER & MOLONEY PLLC
333 West Vine Street, Suite 1500
Lexington, KY 40507
smiller@sturgillturner.com
mmalles@sturgillturner.com
*Counsel for Defendants, West Kentucky Correctional Healthcare, LLC*


D. Barry Stilz
Lynn Sowards Zellen
James E. Yeager III
KINKEAD & STILZ, PLLC
301 East Main Street, Suite 800
Lexington, KY 40507
bstilz@ksattorneys.com
lzellen@ksattorneys.com
jyeager@ksattorneys.com
*Counsel for Madison County Fiscal Court*

/s/ Jeremy A. Bartley
Jeremy A Bartley