UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION
CIVIL ACTION NO. 5:24-cv-00256-REW

PATRICIA LYNN CORNELIUS,
ADMINISTRATRIX OF THE
ESTATE OF JOSEPH GLYNN FRYER                                          PLAINTIFF

v.

MADISON COUNTY FISCAL
COURT., *et al.*                                                                                DEFENDANTS
_____

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
_____

Comes Defendant Steve Tussey in his individual capacity, by counsel, and for his Memorandum in Support of his Motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss with prejudice the Complaint and all claims asserted against him herein by the Plaintiff, Patricia Lynn Cornelius, Administratrix of the Estate of Joseph Glynn Fryer (the "Estate"), respectfully states as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

According to the Complaint, Joseph Fryer was booked into the Madison County Regional Jail ("MCRJ") on or about September 15, 2023, for a probation violation. Complaint, D.E. 1, Page ID# 9, ¶ 59. At that time, Defendant Steve Tussey was the elected Madison County Jailer. *See id.* at Page ID# 4, ¶ 18. Defendant West Kentucky Correctional Healthcare ("WKCH") provided medical care for inmates at the MCRJ. *Id.* at Page ID# 6, ¶ 33. "Based upon information and belief," the Estate alleges Mr. Fryer became so sick while he was incarcerated that he fell into a

---

[1] For the purpose of this Motion only, Jailer Tussey assumes the well-pled facts in the Complaint are true. However, he in no way concedes or waives his right to challenge the truth of those allegations in any future proceedings if his Motion is denied.

1

medical cart, and his condition worsened over a two-day period, yet jail staff did nothing in response to his symptoms. *Id*. at Page ID# 9, ¶¶ 62-64; Page ID# 10, ¶ 72. Mr. Fryer also was never evaluated by a physician despite having heavy and labored breathing, as well as vomiting and being in severe pain. *Id*. at Page ID# 9-10, ¶¶ 65-67. The Estate alleges the lack of response resulted in Mr. Fryer's death due to a perforated duodenal ulcer. *Id*. at Page ID# 9, ¶¶ 60, 61; Page ID# 10, ¶ 75.

On September 18, 2024, the Estate filed the Complaint in this action, naming as defendants the Madison County Fiscal Court, Jailer Tussey, WKCH, and John and Jane Doe employees of both the Madison County Fiscal Court and WKCH. The Complaint asserts claims for negligence, gross negligence, and negligent hiring, training, and supervision under state law against WKCH; cruel and unusual punishment, punishment without due process, deliberate indifference, supervisory liability, and conspiracy pursuant to 42 U.S.C. § 1983 against all Defendants; and *Monell* liability pursuant to 42 U.S.C. § 1983 against the Madison County Fiscal Court. For the reasons set forth below, the Complaint does not contain facts sufficient to assert a plausible claim under any theory against Jailer Tussey, and all claims against him should be dismissed with prejudice.

## **ARGUMENT**

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the Complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The complaint should be dismissed if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Id.* (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)). "In order to survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations omitted); *see also Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (quoting *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007)) (complaint "'must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory'"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To "ensure that no defendant is improperly held liable for the conduct of another," a § 1983 "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Aspey v. Chester Twp.*, 608 F. Appx. 335, 339 (6th Cir. 2015); *Iqbal*, 556 U.S. at 676; *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002) (internal quotation omitted) ("This court has adopted the requirement that a plaintiff allege with particularity all material facts to be relied upon when asserting that a governmental official has violated a constitutional right."). Thus, "a generalized pleading that refers to all defendants generally and categorically," as opposed to alleging, "'with particularity, facts that demonstrate what **each** defendant did to violate the asserted constitutional right,'" does not adequately state a § 1983 claim. *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012) (emphasis in original) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).

Applying these pleading principles, the Estate's claims against Jailer Tussey do not pass Rule 12 muster. The Estate alleges Jailer Tussey is a resident of Madison County, Kentucky, and was the elected Madison County Jailer and therefore owed duties to (1) provide MCRJ inmates access to necessary medical care, (2) hire, train, and supervise deputy jailers, and (3) exercise reasonable and ordinary care and diligence to prevent unlawful injury to inmates. *See* Complaint,

3

D.E. 1, Page ID## 4-5, ¶¶ 17-23.  While the Estate alleges "Defendants" were aware of but disregarded Mr. Fryer's need for medical treatment, the only detail conceivably supporting that assertion as to Jailer Tussey is that Mr. Fryer was vomiting "for hours" prior to his death and that Madison County Employees … were aware Mr. Fryer was vomiting." *Id.* at Page ID# 10, ¶¶ 67 70; *id.* at Page ID# 16, ¶ 112.  The Estate also claims, again without pointing to any facts specific to Jailer Tussey, that "Defendants" failed "to establish, monitor and/or enforce policy directives and operational procedures to ensure that inmates at MCDC receive prompt and reasonable treatment for their medical needs" and that "Defendant supervisors" "had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonably risk of constitutional injury" and "exhibited supervisory indifference or tacit authorization" of their subordinates' misconduct.  *Id.* at Page ID # 15, ¶¶ 107-109.  The Estate does not allege Jailer Tussey ever personally interacted with Mr. Fryer or otherwise became aware of his condition, and its generic, conclusory allegations fall far short of stating a plausible § 1983 claim against Jailer Tussey.

> **I.** **The facts alleged in the Complaint do not state a plausible claim against Jailer Tussey for deliberate indifference to Mr. Fryer's medical needs.**

Whether couched in terms of due process under the Fourteenth Amendment, which applies to pretrial detainees, or cruel and unusual punishment under the Eighth Amendment, which applies to convicted persons, a claim that an inmate was not afforded adequate medical care is evaluated under a deliberate indifference framework that consists of both an objective and a subjective component.  *See Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 591-597 (6th Cir. 2021).  The objective component, which Jailer Tussey assumes for the purpose of this Motion the Estate has adequately pled, is the same under either source and requires the existence of a serious medical need.  *See id.* at 591.  But since the standard for the subjective component differs depending on

4

the applicable constitutional right, which category the inmate falls under matters. *See id.* at 596-97 (modifying "the subjective prong of the deliberate-indifference test for pretrial detainees"). The Sixth Circuit has not conclusively established that a person arrested for a probation violation is considered a pretrial detainee, but the weight of the authority suggests it would reach that determination. *See, e.g., Bryant v. Hensley*, 2024 WL 1180440, at *1 (6th Cir. Mar. 19, 2024) ("[Decedent] violated his probation and missed court dates in three traffic-related cases. As a result, he entered the Boyd County Detention Center as a pretrial detainee...."); *Martin v. Warren Cnty.*, 799 F. Appx. 329, 334 (6th Cir. Jan. 22, 2020) ("[Decedent] began his pretrial detention ... after he was arrested for a parole violation."); *Stefan v. Olson*, 497 F. Appx. 568, 569 (6th Cir. Aug. 31, 2012) (describing a decedent arrested for a probation violation as a pretrial detainee). Nevertheless, since the Estate pled its claims under both the Fourteenth and Eighth Amendments, Jailer Tussey will address both formulations. As explained below, no matter whether Mr. Fryer is considered a pretrial detainee or convicted inmate, the Complaint does not contain facts sufficient to satisfy the subjective element of deliberate indifference under either constitutional provision.

The subjective component of a Fourteenth Amendment deliberate indifference claim requires a pretrial detainee to show "that each defendant 'acted deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 317 (6th Cir. 2023) (quoting *Brawner*, 14 F.4th at 596 (internal quotations in *Brawner* omitted)). The Estate's allegations addressing that standard fall short of plausibility for multiple reasons.

First, allegations premised on "information and belief," like those levied by the Estate, can overcome a motion to dismiss only if there is a factual basis for the purported belief. *Smith v. Gen. Motors LLC*, 988 F.3d 873, 885 (6th Cir. 2021). But the Estate's Complaint does not set forth a

5

factual foundation for its belief that any Madison County employee, let alone Jailer Tussey, knew Mr. Fryer was vomiting or otherwise ill, such as how they became aware of Mr. Fryer's condition. *See*, *e.g.*, *Villo v. Cnty. of Kent*, 2024 WL 2859295 (W.D. Mich. June 6, 2024) (finding allegation that defendant "was notified, appreciated the severity of [the inmate's] medical condition, but nothing was done," was not sufficient to state plausible claim for deliberate indifference where complaint did not contain any "facts as to how [the defendant] was notified or of what [the defendant] was notified"); *Jones v. Kenton Cnty., Ky.*, 2024 WL 1705210 (E.D. Ky. Apr. 19, 2024) (dismissing claim against jailer for deliberate indifference to risk of harm created by cell assignment where "the plaintiff fail[ed] to allege in the Complaint how Jailer Fields contributed to the placement decision"). In addition, an allegation aimed at a category of defendants, like "Madison County Employees" or "Defendants," is not sufficient to adequately plead an individual-capacity deliberate indifference claim. *See Marcilis*, 693 F.3d at 596-97. The Estate's failure to allege any facts demonstrating Jailer Tussey personally was or should have been aware of a serious threat to Mr. Fryer's health, either through his own observations or interactions with Mr. Fryer or otherwise, is fatal to its claim for deliberate indifference, and its Fourteenth Amendment claim against Jailer Tussey should be dismissed.

The bar to establish Eighth Amendment liability is even higher. "To meet the subjective component [under the Eighth Amendment], the plaintiff must show that an official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Brawner*, 14 F.4th at 591 (quoting *Farmer*, 511 U.S. at 837). "[T]he plaintiff must demonstrate that the official was aware of facts from which an inference of substantial risk of serious harm to inmate health or safety could be drawn and that the official actually drew the inference." *Id.* (citing *Farmer*, 511 U.S. at 837). Thus, "absent allegations that [the defendant] 'was aware of facts from which the inference could

6

be drawn that a substantial risk of serious harm exist[ed],' and that he actually '[drew] the inference,' Plaintiff's Eighth Amendment claim cannot survive" a motion to dismiss. *Reilly v. Vadlamudi*, 680 F.3d 617, 625 (6th Cir. 2012) (quoting *Farmer*, 511 U.S. at 837).

The Estate's Complaint does not contain any factual allegations supporting an inference that Jailer Tussey knew there was a serious risk to Mr. Fryer's health and disregarded it. Without any factual details demonstrating the means by which Jailer Tussey became aware of the circumstances or what knowledge he possessed and when he possessed it, the Complaint does not adequately plead a claim for deliberate indifference under the Eighth Amendment. *See, e.g.*, *Caraway v. CoreCivic of Tenn., LLC*, 98 F.4th 679, 686 (6th Cir. 2024) (holding complaint that alleged prison officials knew of drug-smuggling problem but did not "offer any factual details to support that conclusion—such as how the defendants obtained that knowledge, when they obtained it, or what that knowledge entailed" did not satisfy subjective component of Eighth Amendment claim); *Pond v. Haas*, 674 F. Appx. 466, 470-72 (6th Cir. 2016) (affirming dismissal of Eighth Amendment claim against prison warden for delay of urgent medical care where the plaintiff "explicitly allege[d] only that a physician, a medical professional, and 'guards and officers' were aware of his condition" but did not allege the warden "was directly involved or in any way aware of [the prisoner's] condition prior to" the date on which surgery was approved or that warden had reason to know surgery was needed earlier than when it was scheduled). Accordingly, the Estate's Eighth Amendment claims against Jailer Tussey should be dismissed.

**II.      The Estate's supervisory liability claim against Jailer Tussey fails because it does not allege any facts showing Jailer Tussey was involved in unconstitutional conduct by his subordinates.**

"[Section] 1983 liability must be based on more than respondeat superior, or the right to control one's employees." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Additionally,

7

"liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Id.* (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). Thus, to be liable for a subordinate's misconduct, a supervisor must have "'either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Id.* (quoting *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). Finally, "the defendant's execution of his job function must have caused the plaintiff's injury." *Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021).

The Complaint does not identify any specific conduct engaged in by Jailer Tussey and instead contains only conclusory recitations of the elements of supervisory liability as to all defendants generally or, at best, the "Defendant supervisors." In particular, although the Estate alleges the defendants did not adopt or implement policies and procedures related to inmates' medical care, the Estate does not identify any policy that would have prevented Mr. Fryer's death if it had been enacted or enforced. Nor does the Estate explain how or why Jailer Tussey supposedly had actual or constructive knowledge of or tacitly authorized jail employees' allegedly unconstitutional conduct. And merely "correctly recit[ing] the elements" is not sufficient to state a plausible claim where "those elements are not substantiated by any of the factual allegations in the Complaint." *Sanders v. Bottom*, 2016 WL 740429, at *3-4 (E.D. Ky. Feb. 24, 2016) (dismissing individual-capacity failure-to-train claim); *see also Iqbal*, 556 U.S. at 678. The Estate has therefore failed to adequately plead the basis for a supervisory liability claim under § 1983, and its claim against Jailer Tussey should be dismissed.

### III. The § 1983 conspiracy claim should be dismissed because it is not supported by factual allegations.

Initially, a plaintiff "cannot succeed on a conspiracy claim [when] there was no underlying constitutional violation." *Wiley v. Oberlin Police Dep't*, 330 F. Appx. 524, 530 (6th Cir. 2009) (citing *Bauss v. Plymouth Twp.,* 233 F. Appx. 490, 500 (6th Cir. 2007)). Nevertheless, assuming *arguendo* the Estate adequately pled violations of Mr. Fryer's constitutional rights, it has not alleged facts supporting its conspiracy claim against Jailer Tussey.

The elements of civil conspiracy are "'that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.'" *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 563 (6th Cir. 2011) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)). "Although circumstantial evidence may prove a conspiracy, it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Id.* (internal quotation omitted). Instead, the standard for pleading a conspiracy under § 1983 "is relatively strict." *Id.* (internal quotation omitted). Here, the Complaint contains only conclusory allegations reciting the elements of a conspiracy claim, but there are no facts supporting those allegations. Because the Complaint does not satisfy the specificity necessary to plead a conspiracy, the civil conspiracy claim against Jailer Tussey should be dismissed.

### IV. Because the Complaint does not contain facts showing Jailer Tussey violated Mr. Fryer's clearly established rights, the individual-capacity § 1983 claims against him are barred by qualified immunity.

When county officers are sued under § 1983 in their individual capacity, qualified immunity is implicated. *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). To defeat qualified immunity at the motion to dismiss stage, the plaintiff must allege "facts plausibly making

out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Id.* (citing *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015)). Stated another way, "the allegations must demonstrate that each defendant officer, through his or her own individual actions, *personally* violated plaintiff's rights under clearly established law." *Id.* (emphasis in original) (citing *Iqbal*, 556 U.S. at 676; and *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014)). "Qualified immunity ordinarily applies unless the contours of the asserted right were sufficiently clear that every reasonable official would have known what he was doing violated that right." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)).

Qualified immunity "is a defense not just against liability, but against suit itself." *Johnson*, 790 F.3d at 653 (citing *Pearson*, 555 U.S. at 231). Accordingly, immunity questions should be resolved "at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 232. "'Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" *Johnson*, 790 F.3d at 653 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Further, when qualified immunity is raised, the plaintiff bears the burden of showing the right at issue was clearly established and "to do so must point to a case showing that reasonable officers would have known their actions were unconstitutional under the specific circumstances they encountered." *Bell v. City of Southfield, Mich.*, 37 F.4th 362, 367 (6th Cir. 2022). "For a right to be clearly established, 'existing *precedent* must have placed the statutory or constitutional question beyond debate.'" *Id*. at 368 (emphasis in *Bell*) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021)).

As set forth above, the Estate has not pled facts plausibly making out a claim that Jailer Tussey violated Fryer's rights at all, let alone facts under which any reasonable jailer would have known his conduct was unconstitutional. Accordingly, the Estate's claims against Jailer Tussey should be dismissed on the basis of qualified immunity.

## CONCLUSION

For the foregoing reasons, Jailer Tussey respectfully requests the Court grant his motion and dismiss with prejudice all claims asserted against him herein.

Respectfully submitted,

/s/ D. Barry Stilz
D. Barry Stilz
Lynn Sowards Zellen
James E. Yeager III
Kinkead & Stilz, PLLC
301 East Main Street, Suite 800
Lexington, KY   40507
bstilz@ksattorneys.com
lzellen@ksattorneys.com
jyeager@ksattorneys
Telephone: (859) 296-2300
Facsimile: (859) 296-2566
*Counsel for Steve Tussey*

## CERTIFICATE OF SERVICE

I certify that true and correct copies of the foregoing have been served via CM/ECF on this the 3rd day of January, 2025.

/s/ D. Barry Stilz
*Counsel for Steve Tussey*