IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION

| | | |
|---|---|---|
| PATRICIA LYNN CORNELIUS, | ) | |
| Administratrix of the Estate of | ) | |
| Joseph Glynn Fryer, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CASE NO. 5:24-CV-00256-REW |
| | ) | |
| MADISON COUNTY FISCAL COURT, | ) | |
| et al. | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT STEVE TUSSEY'S FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS

COMES NOW Plaintiff Patricia Lynn Cornelius, Administratrix of the Estate of Joseph Glynn Fryer, by the undersigned counsel, and respectfully requests that this Honorable Court DENY the Fed. R. Civ. P. 12(b)(6) Motion to Dismiss filed by Defendant Steve Tussey and as a basis for such states as follows:

## STATEMENT OF FACTS

Joseph Glynn Fryer (hereafter "Fryer" or "Decedent") was booked into the Madison County Detention Center on September 15, 2023, for a failed drug test, which was a probation violation. *Plaintiff's Complaint* at ¶ 59. The Madison County Detention Center (hereafter "the Detention Center") is a 184-bed facility with an average daily population of over 500 inmates, which is nearly triple the facility's capacity. *Id*. at ¶ 25.

Fryer became ill while being incarcerated at the Detention Center and went to the infirmary. *Id*. at ¶ 62. While at the infirmary, Fryer was so sick he fell into a medical cart. *Id*. at ¶ 63.  Fryer's condition deteriorated over a two-day period which was exhibited by vomiting, labored breathing,

and severe pain. *Id.* at ¶¶ 64, 65, 67. Yet at no time was Fryer evaluated by a physician or provided medical treatment, and neither the Madison County Employees nor the WKCH Employees did anything in response to Fryer's vomiting and other physical manifestations of a serious internal medical condition, despite their knowledge of his condition. *Id.* at ¶¶ 66, 70, 71, 72. Because of the lack of medical treatment for his condition, Fryer died on September 19, 2023, at the age of 45. *Id*. at ¶¶ 7, 75. The cause of death was determined to be a perforated duodenal ulcer. *Id.* at ¶ 61.

Defendant Madison County Jailer Steve Tussey ("Defendant Tussey") is vested with the duties to treat inmates humanely and furnish them with proper food and lodging, as well as summoning medical care pursuant to Kentucky Revised Statute § 71.040. *Id.* at ¶ 18. Defendant Tussey, under the Detention Center Policy and Procedure Manual, Chapter 800, 501 KAR 6:020, and the Kentucky Corrections Policies and Procedures, is tasked with the ministerial duty to provide all inmates with health care comparable to those in the surrounding community. *Id.* at ¶ 15. He also serves, under KRS 71.060, as the official solely responsible for the appointment and removal of jail personnel and is liable for their conduct.

In 2019, Defendant Tussey and John Tudor, a former member of the Defendant Madison County Fiscal Court, spoke out publicly about the unsafe and "dangerous" conditions at the jail. *Id.* at ¶ 24, n. 1.[1] In 2019 **WYMT quoted Defendant Tussey as saying that the overcrowding at the Detention Center is "too much," and the facility is "not safe**." *Id.* at ¶ 18, 24. In that same report, formal Fiscal Court member **John Tudor similarly noted, "We are to the point it is dangerous in the jail we are going to have to do something. Almost everyone I talk to says**

---

[1] The article linked in footnote 1 of the Complaint is,
https://www.wymt.com/content/news/Madison-County-Detention-Center-faces-overcrowding-issues-officials-say-it-is-unsafe---558046721.html

**its time to move forward."** *Id*.  At that time the 184 bed Detention Center housed 413 inmates. *Id*. The ratio of inmates to deputies was 50-1. *Id*.

Defendant Tussey has allowed conditions at the Detention Center to worsen since that time. Despite his vow in 2019 to cap the population of the 184 bed Detention Center at 450, the population had risen to more than 500 at the time of the filing of this action. *Id.* at ¶¶ 24, 25.  The overcrowding at the Detention Center has resulted in inadequate adequate health care for inmates. *Id.* at ¶¶ 27, 28, 29. Inadequate medical care is common at the Detention Center which saw at least four publicly reported deaths between August 2022 and February 2024. *Id.* at ¶¶ 29, 54, n.4. For instance, in July 2023, just two months before Fryer's death, a Kentucky medical examiner determined that "medical neglect" contributed to another inmate's death who died of infectious endocarditis, hepatitis C, renal failure, sepsis and brain hemorrhaging after only a one week stay at the Detention Center. *Id.* at ¶ 54, n.4.  In the days before that inmate's death, his cell mates were captured on video exclaiming, "What's it going to take for you all to call a f---ing ambulance?" *Id.* The cell mates were also heard stating that another inmate had died the previous week. *Id.*

Similarly, Joseph Fryer's needless death in this case was a direct result of the failure of Defendant Tussey and Detention Center employees to provide the necessary medical treatment to Fryer in response to a serious and obvious medical condition. That failure to provide medical care, and Fryer's resulting death, directly flowed from the very conditions that Defendant Tussey had publicly criticized on at least one occasion.

## <u>ARGUMENT</u>

Defendant Tussey's Motion to Dismiss Plaintiff's 42 U.S.C. § 1983 claim should be denied. Plaintiff's Complaint, with all factual allegations taken as true and all reasonable

inferences drawn in favor of Fryer's Estate, plausibly alleges a §1983 cause of action against Defendant Tussey. Therefore, the motion should be denied.

Alternatively, if this Court finds that the Complaint does not currently adequately allege a §1983 claim against Defendant Tussey, Plaintiff respectfully requests that this Court grant Plaintiff leave to amend the Complaint.

## I. STANDARD OF REVIEW

Fed. Rule Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court noted in *Erickson v. Pardus*, 551 U.S. 89 (2007), "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" 551 U.S. at 93 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, "[o]n a Rule 12(b)(6) motion, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the pleader." *Evans–Marshall v. Bd. Of Educ. Of the Tipp City Exempted Vill. Sch. Dist*., 428 F.3d 223, 228 (6th Cir. 2005). Nonetheless, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 570). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. The standard calls for only "enough facts to raise a reasonable expectation that ***discovery will reveal evidence***" of the claim. *Twombly*, 550 U.S. at 556 (emphasis added).

The Sixth Circuit has emphasized,

Claims under 42 U.S.C. § 1983 are not subject to heightened pleading standards. Therefore, a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Claims lacking factual merit are properly dealt with through summary judgment under Rule 56. Id. This is because, under the notice pleading standard of the Federal Rules, courts are reluctant to dismiss colorable claims which have not had the benefit of factual discovery.

*Evans–Marshall v. Bd. Of Educ. Of the Tipp City Exempted Vill. Sch. Dist*., 428 F.3d 223, 228 (6th Cir. 2005)(internal citations and quotations omitted).

## II. THIS COURT CAN CONSIDER THE MATERIALS REFERENCED AND LINKED IN THE COMPLAINT IN RULING ON THE MOTION TO DISMISS

As an initial matter, Plaintiff notes that the matters contained in the articles referenced and linked in the Complaint are properly before this Court in considering Defendant Steve Tussey's Motion to dismiss. The court in *McLaughlin v. CNX Gas Co., LLC*, 639 Fed. Appx. 296 (6th Cir. 2016) noted,

We may also consider documents that a defendant attaches to a motion if the documents "are referred to in the plaintiff's complaint and are central to her claims" without converting the motion to one for summary judgment. Likewise, we may consider matters of public record in deciding a motion for judgment on the pleadings.

639 Fed. Appx. at 298-299 (internal citations omitted).

The court in *Plassman v. City of Wauseon*, 85 F.3d 629 (6th Cir. 1996) further noted, "[D]ocuments whose contents are alleged in a complaint and whose authenticity is uncontested, but that are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." (citing *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994)).

Courts have repeatedly held that when ruling on a motion to dismiss, the court can properly consider "materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp*., 186 F.3d 1077, 1079 (8th Cir. 1999)(internal citations and quotation marks omitted). In

*Watson v. Olson*, No. 6:23-cv-03004-RK, 2023 WL 11756893 at *2 (W.D. Mo. 2023), the court found that a video "to which Plaintiff specifically refers in his complaint with time-stamped references and a URL link – is embraced by the complaint and may be properly considered when ruling on Defendants' motion to dismiss."

In this case, Plaintiff's Complaint quotes from, refers to, and provides a URL link to an 2019 news report where Defendant Tussey, the County Jailer, and John Tudor, a former member of the Defendant Madison County Fiscal Court, publicly condemned the **"unsafe"** and **"dangerous"** conditions at the Detention Center and called on Madison County to take steps to alleviate the overcrowding causing those conditions. *Plaintiff's Complaint* at ¶24, n. 1.

The Complaint also refers to and provides a link to a news report providing the details of the death of another inmate at the Detention Center during the same two-month period as Fryer's death where that inmate was similarly denied medical treatment. *Id.* at ¶ 54, n.4.

The contents of those news reports are "referred to in the plaintiff's complaint," and are central to the Plaintiff's claim that the policies and customs of Madison County resulted in the denial of medical care which caused the Plaintiff's death. *McLaughlin*, 639 Fed. Appx. at 298-299 Therefore, those materials can be properly considered by this Court when considering Defendant Tussey's Motion to Dismiss.

## III. PLAINTIFF HAS PLAUSIBLY ALLEGED A 42 U.S.C. § 1983 CLAIM AGAINST DEFENDANT TUSSEY

In support of his motion, Defendant Tussey argues that Plaintiff has failed to sufficiently plead a plausible claim of deliberate indifference under either the Fourteenth or Eighth Amendment. Defendant Tussey is wrong.

First, it is clearly established that inmates have a constitutional right to adequate medical care under the Eighth Amendment and Fourteenth Amendment.

Speaking about the rights of prisoners already adjudicated in *Estelle v. Gamble*, 429 U.S. 97 (1976), the Court held,

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," … proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally ***denying or delaying access to medical care*** or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, ***deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983****. Id*. at 105 (emphasis added) (internal citations omitted).

Pre-trial detainees enjoy those same rights through the Due Process Clause of the Fourteenth Amendment: "[T]he Supreme Court has long held that the Due Process Clause offers protections to pretrial detainees that at least match those afforded convicted prisoners under the Eighth Amendment." *Lawler as next friend of Lawler v. Hardeman County, Tennessee*, 93 F.4th 919, 926 (6th Cir. 2024); "Pretrial detainees have a right to adequate medical care under the Fourteenth Amendment. An officer violates that right if that officer shows deliberate indifference to [a pretrial detainee's] serious medical needs[.]" *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022) (internal citations and quotation marks omitted)

In *Jones v. Kenton Cnty., Kentucky*, No. 2:23-cv-164-DCR, 2024 WL 1705210 (E.D. Ky. Apr. 19, 2024), the court noted that the Sixth Circuit had never definitively decided whether a person incarcerated as a result of a probation violation is a pre-trial detainee entitled to adequate medical treatment under the Fourteenth Amendment or a convicted inmate entitled to adequate medical treatment under the Eight Amendment. However, the court ultimately reasoned, based on the necessary implications of several Sixth Circuit cases, that such persons should be treated as

pre-trial detainees since "the violation which led to his arrest and subsequent detention had not been adjudicated." 2024 WL 1705210 at 84.

Nevertheless, under either Fourteenth or the Eight Amendments, the analysis is one of "deliberate indifference" that consists of both an objective and subjective components. *Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006). For purposes of his Motion to Dismiss, Defendant Tussey does not argue that the objective element has been met.

### A. Plaintiff has sufficiently pled facts raising an inference of deliberate indifference under the Fourteenth Amendment

In considering the subjective component under the Fourteenth Amendment, the Sixth Circuit has emphasized that a pre-trial detainee must plead "more than negligence but less than subjective intent- something akin to reckless disregard. *Brawner v. Scott Cnty*., 14 F.4th 585, 597 (6th Cir. 2021). In other words, Plaintiff must prove that a defendant "acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 316 (6th Cir. 2023).

While formerly there was no distinction in the analysis for pre-trial detainees and prisoners, the Sixth Circuit recently opined that the standard under the Fourteenth Amendment is less onerous than the Eighth Amendment and simply requires recklessness and not actual knowledge. *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 316 (6th Cir. 2023). Acting with deliberate indifference to a serious medical need is reckless disregard of the risk. *Warren v. Prison Health Services, Inc.*, 576 F.App'x 545, 553 (6th Cir.2014).

Based upon the severity of the obviousness of the risk of harm, inferences may be drawn about the actor's subjective state of mind. "Courts may infer the existence of this subjective state

of mind from the fact that the risk of harm is obvious [,]" *Warren*, 576 F. App'x at 553; or in other "usual ways, including inference from circumstantial evidence." *Id*.

**"[W]hether a prison official had the requisite knowledge of a substantial risk is a question of fact" for the jury**. *Warren v. Prison Health Servs*., 576 Fed. Appx. 545, 560 (emphasis added). At the pleading stage it is important to understand that "[i]n most cases in which the defendant is alleged to have failed to provide treatment,"… "there is no testimony about what inferences the defendant in fact drew. Nonetheless, in those cases, a genuine issue of material fact as to deliberate indifference can be based on a strong showing on the objective requirement." *Id*. at 555.

Plaintiff's Complaint alleges that Decedent Fryer was denied lifesaving medical care for two days. During those two days Decedent experienced continued vomiting, labored breathing and extreme pain. It is reasonable to infer that a man dying from a perforated duodenal ulcer would exhibit objective signs of distress. It is also reasonable to infer that a perforated ulcer is a condition that would be treatable had the inmate received any treatment at all.

Additional evidence of Defendant Tussey's deliberate indifference is evidenced by the fact that he was personally aware that there had been other deaths at his facility where the medical examiner concluded that "failure to provide medical treatment" was the inmate's the cause of death. In fact, two months earlier, another inmate died under the care and supervision of Defendant Tussey. In that case, the Kentucky medical examiner determined that the inmate's cause of death was the result of "medical neglect" within the jail operated and controlled by Defendant Tussey.

Like Fryer's death, where his obvious medical needs were ignored for two days, this other inmate died because his medical needs went ignored for one week.  The same news report which detailed the neglect suffered by that inmate also noted that there had been at least four publicly

reported deaths between August 2022 and February 2024 at the Madison County Detention Center. As such, it is undisputed that Defendant Tussey not only knew about these reported deaths, but he also failed to take corrective action to ensure that inmates under his control and supervision received the proper medical care they needed.

Perhaps more troubling is the fact that Defendant Tussey spoke out publicly about the unsafe and constitutionally deficient conditions at his Detention Center. Specifically, in 2019 Defendant Tussey warned that the **"overcrowding"** at the Detention Center was **"too much,"** and the facility was **"not safe."** It should be noted that this public statement was made by Defendant Tussey approximately four years before Fryer's death, and yet he did nothing to correct the unsafe and dangerous conditions at the Detention Center.

Furthermore, in the same report, former Fiscal Court member John Tudor similarly noted, "We are to the point it is dangerous in the jail we are going to have to do something. Almost everyone I talk to says it's time to move forward." It is undisputed that when this statement was made, the 184 bed Detention Center housed 413 inmates, and the ratio of inmates to deputies was 50-1.

Plaintiff's Complaint alleges that the severe overcrowding which Defendant Tussey and John Tudor publicly condemned as **"not safe"** and **"dangerous,"** resulted "in the inability of Defendant Tussey and the Detention Center to provide adequate health care services to inmates, including Decedent Fryer." *Plaintiff's Complaint* at ¶ 27. These statements illustrate Defendant Tussey's reckless behavior. It is undisputed that Defendant Tussey was aware of the dangers at his overcrowded jail; that there were issues concerning the handling of inmate medical needs; and that these issues had caused or contributed to the death of four inmates under his care and supervision.

Accordingly, Plaintiff's Complaint sufficiently alleges facts from which the inference can be drawn that Defendant Tussey acted with deliberate indifference in failing to remedy ongoing constitutional violations regarding the lack of proper medical care inmates received at Defendant Tussey's facility. As such, Defendant Tussey's motion must be denied.

### B. Plaintiff has sufficiently pled facts to raise an inference of deliberate indifference even under the heightened Eight Amendment Standard

Under the Eight Amendment, a prisoner must allege facts that the official being sued knew of and disregarded an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 315 (6th Cir. 2023).

Plaintiff must show "subjectively perceived facts from which to infer substantial risk to the prisoner, that [the defendant] did in fact draw the inference, and that [the defendant] disregarded that risk." *Perez v. Oakland County*, 466 F.3d 416, 424 (6th Cir. 2006). Deliberate indifference requires proof that a municipal actor disregarded a known or obvious consequence of his action. *Connick v. Thompson,* 563 U.S. 51, 131 S.Ct.1350, 1360, 179 L.Ed.2d 417 (2011).

While the standard for a prisoner is higher than a pre-trial detainee, deliberate indifference in this context does not require that prison officials intend to cause harm or that they know that harm will result. *Farmer v. Brennan*, 511 U.S 825, 835,114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A prisoner can establish deliberate indifference when they receive "medical care which is so cursory as to amount to no treatment at all." *Darrah v. Krisher*, 865 F.3d 361, 370 (6th Cir. 2017).

As noted herein, Defendant Tussey was aware of the Detention Center's dangerous and unsafe conditions that had caused or contributed to at least four inmates' deaths, where according to the Kentucky Medical Examiner, several of the deaths were attributed to "medical neglect."

Furthermore, Defendant Tussey's own public statements unequivocally establish that he was aware of the dangerous and unconstitutional conditions inside his facility. Despite knowing this, Defendant Tussey failed to take correction action and as a result, an inmate (Fryer) died because he did not receive proper medical care to treat a very treatable duodenal ulcer perforation. Following his lack of leadership, Defendant Tussey's subordinates acted with deliberate indifference and took no action to help Fryer prior to his death, even as he was vomiting, struggling to breathe, and in extreme pain.

Defendant Tussey does not dispute that under Kentucky law, he is vested with the responsibility to ensure that inmates are treated humanely and furnished with proper food, lodging and medical care comparable to that in the surrounding community. Nor does he dispute that he was the elected official responsible for the transfer of sick prisoners, the hiring of properly trained employees, and the development and maintenance of policies designed to ensure the health and safety of every inmate under his care and supervision.

As shown herein and as alleged in Plaintiff's Complaint, the dangerous and unsafe conditions at the Detention Center continued to decline after Defendant Tussey publicly recognized and condemned the dangerous conditions at his facility.

At this stage, Plaintiff has pleaded enough facts to establish that Defendant Tussey acted with deliberate indifference under both standards. Accordingly, Defendant Tussey's motion must be denied.

## IV. THE PLEADINGS SUFFICIENTLY DEMONSTRATE PERSONAL INVOLVEMENT OF DEFENDANT TUSSEY

Next, Defendant Tussey's argues that Plaintiff must plead facts alleging the "personal involvement" of Defendant Tussey. First, it is important to note that the Sixth Circuit has not adopted this standard. Second, even if that is the standard in this circuit, Plaintiff's Complaint still

passes muster because it alleges facts showing Defendant Tussey's personal involvement in the death of Decedent Fryer.

The "personal involvement" standard for Section 1983 claims was set forth in *Littlejohn v. City of New York*, 795 F.3d 297 (2[nd]Cir. 2015). In that case, the Second Circuit held that "'because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. at 314.

The *Littlejohn* court further held that "personal involvement can be established by showing that:(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring." *Id.*

Plaintiff is without the benefit of discovery at this point. However, that is not fatal to Plaintiff's case at this stage in the proceedings. Plaintiff's Complaint establishes that Defendant Tussey was aware of the Detention Center's dangerous and unsafe conditions that caused or contributed to four inmates' deaths; that he failed to take corrective action to remedy the dangerous and unsafe conditions at the facility; that inmates at the facility were not receiving proper medical care and treatment; that he was grossly negligent in supervising his subordinates who committed these wrongful acts; and that Defendant Tussey showed deliberate indifference to the dangerous conditions at his facility by failing to take corrective action to remedy, by his own public

admission, that the **"overcrowding"** at the Detention Center was **"too much"** and that the facility was **"not safe."**

In *Brown v. Plata*, 563 U.S. 493 (2011), the Supreme Court discussed at length the necessary correlation between "exceptional" overcrowding, and the denial of "adequate medical care to inmates." Specifically, the Court held that "[t]he degree of overcrowding in California's prisons is *exceptional*" where the prison population there was merely "almost double" the amount the prisons were designed to house." *Id*. at 502. The Court further held, "Crowding also creates unsafe and unsanitary living conditions that *hamper effective delivery of medical and mental health care*." *Id*. at 519 (emphasis added). The Court further explained, "On any given day, prisoners in the general prison population may become ill, thus entering the plaintiff class; and *overcrowding may prevent immediate medical attention necessary to avoid suffering, death, or spread of disease*." *Id*. at 520 (emphasis added).

The Court then quoted several high-ranking corrections officials who identified overcrowding as the primary impediment to providing inmates with constitutionally adequate healthcare: "[C]rowding 'makes it virtually impossible for the organization to develop, much less implement, a plan to provide prisoners with adequate care.'" *Id*. at 521; "'[Overcrowding is the primary cause of the medical and mental health care violations.'" *Id*.; "[O]vercrowding is 'overwhelming the system both in terms of sheer numbers, in terms of the space available, in terms of providing healthcare.'" *Id*. at 522; "'[T]he biggest inhibiting factor right now in California being able to deliver appropriate mental health and medical care is the severe overcrowding.'" *Id*.

Turning to the Complaint in this matter, Plaintiff alleges Defendant Tussey was aware of the overcrowding at the Detention Center and the dangerous and unsafe conditions it created. In fact, the overcrowding at the Detention Center, under the control and supervision of Defendant

- 14 -

Tussey, far exceeds what the Supreme Court in *Brown* called "exceptional" where the number of inmates was merely "almost double" the capacity of the prisons. *Id*. at 50. In her Complaint, Plaintiff alleges that the 184 bed Madison County Detention Center currently houses a daily average of more than **500 inmates**: an allegation not disputed by Defendant Tussey.

It is undisputed that Defendant Tussey was responsible for ensuring that inmates at his facility were treated humanely, provided with proper food and lodging, and that they were provided with proper medical care comparable to those in the surrounding community. More importantly, it is undisputed that Defendant Tussey was the elected official responsible for ensuring that Detention Center employees were following the proper procedures regarding inmate health and safety. Despite his own public comments regarding the unsafe and dangerous conditions at his facility, Defendant Tussey failed to take corrective action regarding the overcrowding and medical neglect of sick inmates at his facility.

Here, Plaintiff alleges that Decedent Fryer was denied proper medical care for over two days, even though he requested help on multiple occasions. By his own admission, Defendant Tussey knew that inmates were not receiving proper medical care at his facility. Instead of implementing policies and procedures to ensure the health and safety of inmates under his supervision, he maintained the status quo and failed to train or supervise the personnel under his control, to ensure that inmates' medical needs were being properly met. As such, it is reasonable to infer that Defendant Tussey was grossly negligent in training his deputies to deal with sick inmates, especially those exhibiting serious signs of distress like Decedent Fryer.

Accordingly, Plaintiff has pleaded sufficient facts to show Defendant Tussey personal involvement in this case. Accordingly, Defendant's motion must be denied.

- 15 -

## V. CONSPIRACY IS SUPPORTED BY THE PLEADINGS

Defendant Tussey also argues that Plaintiff's Civil Conspiracy claim under 42 U.S.C. § 1983 should be dismissed because it is no supported by any factual allegations. Once again, Defendant Tussey is wrong.

A civil conspiracy is an agreement between two or more people to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). To prove conspiracy, plaintiffs must show (1) "that there was a single plan," (2) "that the alleged coconspirator shared in the general conspiratorial objective," and (3) "that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." Id. at 944 (citations omitted).

Plaintiffs need not prove an express agreement among the conspirators, nor must they show that each conspirator knew "all of the details of the illegal plan or all of the participants involved." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). Plaintiffs asserting a civil conspiracy can "rely on circumstantial evidence to establish an agreement among the conspirators".. as long as the conspiracy claims are "pled with some degree of specificity" and do not rely on "vague and conclusory allegations," *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Once again, Defendant Tussey wants this Court to adopt a standard requiring Plaintiff to allege facts showing the "personal involvement" of Defendant Tussey. The Sixth Circuit has expressly **rejected** this formulation. In *Rieves v. Town of Smyrna*, 67 F.4th 856 (6th Cir. 2023), the Court held:

> "Section **1983 civil conspiracy claims do not contain a 'personal involvement' requirement**. Such a standard would defeat the purpose of permitting a civil conspiracy claim because, at its core, "section 1983 permits a jury to hold co-conspirators liable for the damages flowing from a constitutional deprivation that all of the co-conspirators may not have personally carried out." *Sánchez v. Foley*, 972 F.3d 1, 11 (1st Cir. 2020); see also *Webb*, 789 F.3d at 671. ("[T]he overt-act element requires only that at least one of the alleged conspirators committed an overt act or omission in furtherance of the conspiracy."); *Simpson v. Weeks*, 570 F.2d 240, 243 (8th Cir. 1978) ("The charge of conspiracy in a [§

- 16 -

1983] civil action is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible for any overt act or acts.") (quoting *Rutkin v. Reinfeld*, 229 F.2d 248, 252 (2d Cir. 1956)). Liability for § 1983 conspiracy can attach even where "parties decide to act 'interdependently,' each actor deciding to act only because he was aware that the others would act similarly[.]" *Aubin v. Fudala*, 782 F.2d 280, 286 (1st Cir. 1983).
*Rieves*, at 863. (emphasis added).

Here, Plaintiff alleges that jail employees failed to provide medical attention to Decedent Fryer and such deprivation of care caused his death. The pattern of depriving sick inmates of adequate medical care was an overt act carried out by multiple actors, including Defendant Tussey, the Madison County Fiscal Court, jail staff and WKCC. As shown herein, Defendant Tussey knew of and permitted the overcrowding at the Madison County Detention Center. Defendant Tussey knew from the recent medical neglect death that those employees under his control and supervision were not providing the inmates with the medical care they required. While these actors may have performed their functions interdependently, each continued to overtly act in a manner that continued the pattern of depriving sick inmates the medical care they desperately needed. For these reasons, Defendant's motion must be denied.

## VI. IMMUNITY DOES NOT APPLY DUE TO DEFENDANT TUSSEY'S VIOLATION OF DECEDENT'S RIGHTS

Lastly, Defendant Tussey's argues that he is entitled to qualified immunity. It is well established that qualified immunity protects governments officials, like Tussey, from personal civil liability if their conduct does not violate an individual's clearly established rights. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *see also Rieves v. Town of Smyrna*, 67 F.4th 856 (6th Cir. 2023).

Contrary to Defendant Tussey's assertions, Plaintiff's Complaint clearly alleges that Defendant Tussey violated Decedent Fryer's clearly established rights, in this case, adequate medical care.

It is well established that inmates have a constitutional right to adequate medical care whether viewed through the lens of either the Eighth or Fourteenth Amendment.

Speaking about the rights of prisoners already adjudicated in *Estelle v. Gamble*, 429 U.S. 97 (1976), the Court held,

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," … proscribed by the Eighth Amendment. This is true whether indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally ***denying or delaying access to medical care*** or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, ***deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983***. *Id.* at 105 (emphasis added) (internal citations omitted).

In this case, Plaintiff has pleaded sufficient facts establishing that Defendant Tussey violated Decedent Fryer's constitutional right to adequate health care. Plaintiff has also pleaded sufficient facts establishing that Defendant Tussey knew that inmates' constitutional rights to adequate health care were being violated at **his facility**, and that Defendant Tussey failed to make safe the dangerous conditions caused by overcrowding that made his facility "not safe."

Because Plaintiff has pleaded sufficient facts establishing that Defendant Tussey violated Decedent Fryer's clearly established constitutional rights, the motion to dismiss must be denied.

## VII. ALTERNATIVELY, PLAINTIFF SHOULD BE GIVEN LEAVE TO AMEND THE COMPLAINT

While Plaintiff contends that the Complaint, as currently drafted, plausibly alleges a §1983 claim against Defendant Tussey, Plaintiff would alternatively request that this Court grant the

Plaintiff leave to amend if this Court finds that the Motion to Dismiss as to Defendant Tussey is due to be granted. "Federal Rule Civil Procedure 15(a) provides that leave to amend a pleading should be 'freely given when justice so requires.' Furthermore, the thrust of Rule 15 is to reinforce the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982).

Therefore, if this Court finds that Defendant Tussey's Motion to Dismiss is due to be granted, Plaintiff would respectfully request leave to amend.


**CONCLUSION**

For the above stated reasons, Plaintiff respectfully requests that this Honorable Court DENY the Motion to Dismiss filed by Defendant Tussey. Alternatively, Plaintiff requests leave to amend the Complaint.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Stephen P. New*
Stephen P. New (WVSB No. 7756)
Stephen New & Associates
430 Harper Park Drive
Beckley, West Virginia 25801
(304) 250-6017


LAW OFFICE OF JEREMY A. BARTLEY


/s/ Jeremy A. Bartley
Jeremy A Bartley

Attorney for Plaintiff:

35 Public Square
Somerset, KY 42501

</div>

(606) 678-7265
(606) 416-5974 (facsimile)
Email: jbartleylaw@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2025, a true and correct copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's CM/ECF System:

L. Scott Miller
Maureen C. Malles
STURGILL, TURNER, BARKER & MOLONEY PLLC
333 West Vine Street, Suite 1500
Lexington, KY 40507
smiller@sturgillturner.com
mmalles@sturgillturner.com
*Counsel for Defendants, West Kentucky*
*Correctional Healthcare, LLC*


D. Barry Stilz
Lynn Sowards Zellen
James E. Yeager III
KINKEAD & STILZ, PLLC
301 East Main Street, Suite 800
Lexington, KY 40507
bstilz@ksattorneys.com
lzellen@ksattorneys.com
jyeager@ksattorneys.com
*Counsel for Madison County Fiscal Court*


*/s/ Stephen P. New*
Stephen P. New (WVSB No. 7756